**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**EMPIRE STATE ETHANOL AND ENERGY, LLC,**

           **Plaintiff,**          1:08-cv-623
                                                (GLS/RFT)
          **v.**

**BBI INTERNATIONAL; JEFF KISTNER,**
Individually and in his capacity as Member of Bio-Pro Resources, LLC, and/or AlbanyRenewable Energy, LLC; **ED STAHL,** Individually and in his capacity as Member of Bio-Pro Resources, LLC, and/or Albany Renewable Energy, LLC; **ALBANY RENEWABLE ENERGY, LLC; BIO-PRO RESOURCES, LLC;** and **MIKE BRYAN,** Individually and in his capacity as Chief Executive Officer, BBI International,

                      **Defendants.**
_____

**APPEARANCES:**                      **OF COUNSEL:**

**FOR THE PLAINTIFF:**
Knauf, Shaw Law Firm             LINDA R. SHAW, ESQ.
1125 Crossroads Building
2 State Street
Rochester, NY 14614

**FOR THE DEFENDANTS:**
*BBI International and Mike Bryan*
The West Firm, PLLC               YVONNE E. HENNESSEY, ESQ.
677 Broadway, 8th Floor
Albany, NY 12207

*Jeff Kistner*
Hancock, Estabrook Law Firm          MICHAEL J. SCIOTTI, ESQ.
1500 AXA Tower I
Syracuse, NY 13221

*Ed Stahl, Albany Renewable Energy,*
*and Bio-Pro Resources*
Hoffman, Hubert Law Firm             TERRANCE J. HOFFMAN, ESQ.
4629 Onondaga Boulevard
Syracuse, NY 13219

**Gary L. Sharpe**
**District Court Judge**

# MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff Empire State Ethanol and Energy, LLC commenced this action against defendants BBI International, Mike Bryan, BBI Chief Executive Officer, Albany Renewable Energy, LLC (ARE), Bio-Pro Resources, LLC, and Jeff Kistner and Ed Stahl, Members of Bio-Pro and/or ARE, alleging unfair competition and other unlawful conduct in violation of §§ 1 and 2 of the Sherman Act,[1] §§ 3 and 4 of the Clayton Act,[2] and the New York State Donnelly Act.[3] (*See* Am. Compl., Dkt. No. 17.) Empire

---

[1] 15 U.S.C. §§ 1, 2.

[2] 15 U.S.C. §§ 14, 15.

[3] N.Y. GEN. BUS. LAW § 340, *et seq.*

2

additionally asserts claims for breach of contract, fraud, tortious interference with contract and prospective contractual relations, and breach of fiduciary duties. (*See id.*) Pending are BBI and Bryan's motion to confirm an arbitration award and be dismissed from the action, (Dkt. No. 90), and Kistner's motion for summary judgment, (Dkt. No. 91). For the reasons that follow, BBI and Bryan's motion is granted in part and denied in part, and Kistner's motion for summary judgment is denied.

## II. Background

### A. Factual History[4]

In 2006, plaintiff Empire, a New York limited liability company, began searching for a site in New York State to locate a dry mill ethanol plant. (*See* Am. Compl. ¶ 19, Dkt. No. 17.) BBI, a Colorado-based corporation, provides bio-fuels facility services regarding project development, financing, construction, and operation. (*See id.* at ¶ 21.) Mike Bryan is BBI's Chief Executive Officer and President of Project Development. (*See id.* at ¶ 9.) In September 2006, Empire entered into an Ethanol Plant Feasibility Study Contract with BBI, according to which BBI agreed to

---

[4]The court additionally directs the parties to the factual recitation contained in its March 20, 2009 Memorandum-Decision and Order. (*See* Mar. 20, 2009 Order at 3-7, Dkt. No. 48.)

3

identify suitable sites and develop a feasibility study for Empire.  (*See id.* at ¶ 20.)  To aid BBI's search, Empire provided BBI with access to confidential business information and trade secrets related to, among other things, Empire's strategic planning, financial condition, site evaluation criteria, and business and investment goals and objectives.  (*See id.* at ¶ 22.)  This exchange of information was made pursuant to the Contract's confidentiality provision, which was subject to a five-year period of effectiveness.  (*See id.* at ¶ 23.)

On May 1, 2007, Empire and BBI entered into a Project Development Agreement (PDA), whereby BBI agreed to perform various services for and advise Empire regarding the development, financing, and construction of an ethanol plant.  (*See id.* at ¶¶ 30-31.)  Under the PDA, which included a three-year confidentiality provision, BBI allegedly assumed obligations of trust and responsibility to Empire.  (*See id.* at ¶¶ 34-35.)  Additionally, BBI's provision of services was made contingent on Empire's agreement to utilize the services of certain third-party contractors pre-selected by BBI.  (*See id.* at ¶ 42.)  The Agreement also contained an arbitration provision requiring arbitration of "any dispute or controversy arising between the Parties hereto under or relating to [the PDA] or [BBI's] performance or nonperformance of

4

its obligations hereunder." (Marciano Decl., PDA ¶ 7, Dkt. No. 25:3.)

Beginning in June 2007, defendants Kistner, then BBI's Vice President of Project Finance, and Stahl, then BBI's Senior Manager, were assigned to oversee Empire's project. (*See* Am. Compl. ¶¶ 15-16, 36-37, Dkt. No. 17.) However, according to Empire, in April 2007, Kistner and Stahl formed Bio-Pro for the purpose of developing a competing ethanol facility in New York. (*See id.* at ¶ 29.) Empire alleges that Kistner and Stahl never disclosed their activities regarding Bio-Pro. (*See id.* at ¶ 40.)

In Fall 2007, Empire began researching the Port of Albany as a potential site, and notified BBI regarding its interest in a Port of Albany site. (*See id.* at ¶ 50.) Based on these new findings, Empire approached officials at BBI, including Kistner, about the possibility of preparing a new feasibility study for Empire regarding the Port of Albany site. (*See id.* at ¶ 53.) Shortly thereafter, on November 7, 2007, Empire met with BBI officials, including Kistner and Stahl, to discuss its proposal and to address what Empire perceived as BBI's "foot dragging." (*See id.* at ¶ 54.) At this meeting, Mark Yancey, BBI's Vice President of Project Development, informed Empire that BBI could not perform a feasibility study for the Port of Albany site because BBI had developed a new confidential technology

5

that had become BBI's principal focus. (*See id.* at ¶ 55.) Empire alleges that this statement was knowingly false and was made as a pretext to induce Empire to abandon its efforts regarding the Port of Albany site. (*See id.* at ¶ 56.) In reliance on this representation, Empire terminated the PDA, which was made retroactively effective November 1, 2007. (*See id.* at ¶¶ 57-59.) According to Empire, BBI's intent was to cause Empire to terminate the PDA so that BBI could assume a more prominent role in Bio-Pro's acquisition of a Port of Albany site. (*See id.* at ¶ 56.)

Two days later, on November 9, Kistner formed a Delaware-based company named "New York Renewable Energy, LLC," which he subsequently renamed "Albany Renewable Energy, LLC" on November 16. (*See id.* at ¶¶ 60-61.) Empire alleges that Kistner and Stahl had been using the name "Albany Renewable Energy, LLC" in October 2007 or earlier. (*See id.* at ¶ 62.) Empire further alleges that while the PDA was in effect and while Kistner and Stahl were overseeing the Empire project, Kistner and Stahl used BBI's resources and relationships to promote Bio-Pro and ARE's Port of Albany project. (*See id.* at ¶¶ 72-77.) In addition, according to Empire, after terminating the PDA, the third-party contractors selected by BBI refused to furnish any further services in relation to

6

Empire's Port of Albany project.  (*See id.* at ¶ 64.)

On February 24, 2008, Empire received an email from Kistner, in which Kistner revealed his role in forming and operating ARE: "I feel I have an ethical obligation to inform you that I am the CFO and one of the founding members of another entity that has also submitted a proposal to the Port [of Albany].  I suspect this email comes as a bit of a surprise."  (*Id.* at ¶ 81.)

## B.  Procedural History

On June 13, 2008, Empire filed suit against BBI, Bryan, Yancey,[5] Kistner, Stahl, Bio-Pro, and ARE, asserting nine causes of action arising under federal and state law, including unfair competition, unlawful restraint of trade and monopolization, exclusive dealings, breach of contract, fraud, tortious interference with contract and with prospective contractual relations, and breach of fiduciary duties.  (*See id.* at ¶¶ 97-162.)  Empire also sought to pierce ARE's corporate veil.  (*See id.* at ¶¶ 163-70.)

On October 3, 2008, defendants moved to dismiss the action and compel arbitration under the PDA.  (*See* Dkt. Nos. 26-28.)  On March 20, 2009, the court granted BBI and Bryan's motion to compel arbitration and

---

[5]By stipulation, Yancey was dismissed from the action.  (*See* Dkt. No. 70.)

7

stayed the action against BBI and Bryan.  (*See* Mar. 20, 2009 Order at 9-27, Dkt. No. 48.)  However, as to the nonsignatory defendants, Kistner, Stahl, Bio-Pro, and ARE, the court denied their motions to compel arbitration.  (*See id.* at 27-28.)  The court thereafter granted a discretionary stay to Kistner, Stahl, Bio-Pro, and ARE.  (*See* June 25, 2009 Order, Dkt. No 64.)

Following a five-day arbitration hearing held before Arbitrator Walter Gans, a written decision was issued on September 22, 2010.  (*See* Hennessey Decl., Ex. B, Arbitration Award, Dkt. No. 90:4.)  Arbitrator Gans deemed Empire's breach of contract, fraud, negligent supervision, negligent misrepresentation, tortious interference, breach of fiduciary duties, and antitrust claims "precluded" either under the PDA or due to the "lack of legally sufficient evidence" under Colorado law.  (*Id.* at ¶¶ 9-14.)  Still, Arbitrator Gans found that BBI and Bryan violated the PDA's implied covenant of good faith and fair dealing by failing to disclose Kistner and Stahl's activities to Empire, and accordingly awarded Empire $120,000.00 plus costs and fees in the amount of $100,000.00, and post-award interest. (*See id.* at ¶¶ 15-19.)

On November 15, 2010, BBI and Bryan moved to confirm the

8

arbitration award and dismiss all claims against BBI and Bryan.  (*See* Dkt. No. 90.)  And on November 29, Kistner moved for summary judgment, contending that Empire's claims should be dismissed under the doctrines of collateral estoppel and res judicata.  (*See* Dkt. No. 91.)

### III.  Discussion

### A.    Confirmation of the Arbitration Award

BBI, Bryan, and Empire uniformly seek to confirm Arbitrator Gans's award.  (*See* Shaw Decl. ¶ 3, Dkt. No. 95.)  Moreover, Empire concedes that the arbitration award "addressed all of [Empire's] pending and proposed claims against the BBI Defendants in this matter."  (*Id.* at 12.)  Accordingly, the court grants BBI and Bryan's motion insofar as it seeks confirmation of the award.

However, as to BBI and Bryan's request to be terminated from the action, the court denies that aspect of their motion.  Empire points out, and BBI and Bryan do not dispute, that the arbitration award remains unsatisfied.  (*See id.* at ¶ 3.)  According to BBI, a dispute has arisen with its insurer, whose refusal to cover the arbitration award has forced BBI and Bryan to initiate an action for declaratory relief.  (*See* Hennessey Dec. 30, 2010 Letter Br. Dkt. No. 99; *see also BBI Int'l v. Westchester Fire Ins. Co.*,

9

No. 1:10-cv-1585 (N.D.N.Y. filed Dec. 30, 2010) (McAvoy, J. and Treece, M.J.).) Consequently, due to their present failure to satisfy the arbitration award, the court denies BBI and Bryan's motion to be dismissed from the action. Once the award has been satisfied, BBI and Bryan may renew their motion for dismissal.

**B.     Summary Judgment**

**1.     Standard of Review**

The standard for summary judgment is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its previous opinion in *Bain v. Town of Argyle*, 499 F. Supp. 2d 192, 194-95 (N.D.N.Y. 2007).

**2.     Res Judicata and Collateral Estoppel**[6]

"A fundamental precept of common-law adjudication, embodied in the related doctrines of collateral estoppel and res judicata, is that a right, question or fact distinctly put in issue and directly determined by a court of

---

[6]For the reasons outlined by Kistner, the court finds no waiver of the res judicata and collateral estoppel defenses, though such a finding is ultimately inconsequential. (*See* Kistner Mem. of Law at 11-12, Dkt. No. 91:2 (citing, inter alia, *Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003)).)
    With regard to Empire's January 3, 2011 letter, in which it seeks to supplement the record, the court denies the request as unnecessary. (*See* Shaw Jan. 3, 2011 Letter, Dkt. No. 100; *see also* Whitaker Jan. 4, 2011 Resp. Letter, Dkt. No. 101.)

10

competent jurisdiction cannot be disputed in a subsequent suit between the same parties or their privies." *Montana v. United States*, 440 U.S. 147, 153 (1979) (internal quotation marks and citation omitted).

The doctrine of res judicata, or claim preclusion, "holds that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 918 (2d Cir. 2010) (internal quotation marks and citation omitted).  In determining whether res judicata bars a subsequent action, courts must "consider whether (1) the prior decision was a final judgment on the merits, (2) the litigants were the same parties, (3) the prior court was of competent jurisdiction, and (4) the causes of action were the same." *Corbett v. MacDonald Moving Servs.*, 124 F.3d 82, 87-88 (2d Cir. 1997) (citation omitted).  The second prong of this test may be satisfied even if the party seeking to be bound was not involved in the earlier action "only when the precluded party's interests [were] represented in [the] previous [action]." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir. 1995) (citation omitted). Accordingly, "the interests involved in the prior litigation [must have been] virtually identical to those in [the] later litigation." *Id.* (citation omitted); *see*

*also Watts v. Swiss Bank Corp.*, 27 N.Y.2d 270, 277 (N.Y. 1970).  And as to the fourth prong of the test, "the second action must involve the same 'claim' or 'nucleus of operative fact' as the first."  *In re Layo*, 460 F.3d 289, 292 (2d Cir. 2006) (citation omitted).

"Collateral estoppel, or issue preclusion, bars the relitigation of issues actually litigated and decided in the prior proceeding, as long as that determination was essential to that judgment."  *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995) (citation omitted); *see also Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y.2d 343, 349 (N.Y. 1999) ("Collateral estoppel ... precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party, whether or not the tribunals or causes of action are the same." (internal quotation marks and citations omitted)).  Collateral estoppel applies when:

> (1) [T]he issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir. 1998) (citation omitted).  "Prior proceedings" may include arbitration,

12

whereby the doctrines of collateral estoppel and res judicata can operate to bar claims "based on the binding effect of past determinations in arbitral proceedings." *Pike v. Freeman*, 266 F.3d 78, 90-91 (2d Cir. 2001) (citations omitted); *see also Am. Ins. Co. v. Messinger*, 43 N.Y.2d 184, 189-90 (N.Y. 1977) ("[I]n general the doctrines of claim preclusion and issue preclusion between the same parties ... apply as well to awards in arbitration as they do to adjudication in judicial proceedings." (citations omitted)). The party seeking to have an issue precluded "bears the burden of showing with clarity and certainty what was determined by the prior judgment, and issue preclusion will apply only if it is quite clear that this requirement has been met." *See Postlewaite v. McGraw-Hill*, 333 F.3d 42, 49 (2d Cir. 2003) (internal quotation marks, citations, and emphasis omitted). Thus, "to obtain summary judgment on collateral estoppel grounds based on an arbitration award, the [moving party] must make a showing so strong that no fair-minded jury could fail to find that the arbitrator necessarily denied the claim for the reason they assert." *Id.* (internal quotation marks and citation omitted). Importantly, this burden cannot be satisfied with "equivocal" evidence or where more than one "colorable reason" exists for the arbitrator's decision. *Id.* at 49-50.

13

Here, Kistner has failed to establish that the arbitration decision operates under either res judicata or collateral estoppel to bar the further litigation of Empire's claims.  First, Kistner's reliance on res judicata is misplaced since the claims adjudicated by Arbitrator Gans were evaluated in the context of the PDA, in accordance with Colorado law, and with Bryan and BBI's liability in question.  The facts, as they exist at present, could unquestionably support a basis for Kistner, Stahl, ARE, and Bio-Pro's liability separate and distinct from BBI and Bryan's.  As the court discussed at length in its March 20, 2009 Memorandum-Decision and Order, Kistner and Stahl, neither of whom were parties to the PDA, have been sued in their capacity as members of ARE and Bio-Pro.  (*See* Mar. 20, 2009 Order at 12-15, Dkt. No. 48.)  As such, the court is unable to categorize Arbitrator Gans's decision as a final judgment on the merits of Empire's claims against Kistner, Stahl, ARE, and Bio-Pro.  Likewise, the court finds identity or sameness of the causes of action absent.  Thus, Kistner's motion for summary judgment on res judicata grounds is denied.

Second, and for similar reasons, the court rejects Kistner's collateral estoppel argument.  The issues presented in the arbitration were not identical to the issues regarding Kistner, Stahl, ARE, and Bio-Pro's liability.

14

Nor were the issues decided by Arbitrator Gans necessary to support a final judgment on the merits.  As to Empire's claims sounding in negligence, breach of fiduciary duties, breach of contract, and fraud or concealment, they were precluded by reason of the PDA.  (*See* Hennessey Decl., Ex. B, Arbitration Award ¶¶ 9-10, Dkt. No. 90:4.)  As to Empire's claims of tortious interference, Arbitrator Gans dismissed them under Colorado State law, in accordance with the PDA's choice-of-law clause.  (*See id.* at ¶¶ 3, 11.)  And as to Empire's federal and New York State antitrust claims, they were also dismissed in conclusory fashion "for legally insufficient proof."  (*Id.* at ¶ 13.)  Consequently, because several 'colorable reasons' exist for Arbitrator Gans's rulings, and because such rulings were grounded in the PDA and Colorado law, the court denies Kistner's motion for summary judgment based on collateral estoppel.

## IV.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that BBI and Mike Bryan's motion to confirm the arbitration award (Dkt. No. 90) is **GRANTED**; and it is further

**ORDERED** that BBI and Bryan's motion to be dismissed from this action (Dkt. No. 90) is **DENIED** with leave to renew upon satisfaction of the

15

arbitration award; and it is further

**ORDERED** that Jeff Kistner's motion for summary judgment (Dkt. No. 91) is **DENIED**; and it is further

**ORDERED** that the stay is **LIFTED**; and it is further

**ORDERED** that Empire's motion for leave to file a second amended complaint (Dkt. No. 71) is **TERMINATED** and Empire may refile its motion to amend;[7] and it is further

**ORDERED** that this matter is hereby referred to Magistrate Judge Randolph F. Treece for further proceedings; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

January 25, 2011
Albany, New York

_____
United States District Court Judge

---

[7] The court acknowledges Kistner's closing assertions regarding, inter alia, Empire's claims for breach of contract and breach of fiduciary duties as they relate to Kistner, Stahl, ARE, and Bio-Pro. (*See* Kistner Reply Mem. of Law at 10, Dkt. No. 97.) While it declines to address these assertions at this stage, the court does counsel Empire to reevaluate the factual and legal basis for each of its claims in light of the arguments it has advanced and the rulings the court has made here and in its prior orders.

16